```
FILED
CLERK, U.S. DISTRICT COURT
10/26/2020
CENTRAL DISTRICT OF CALIFORNIA
BY: ___JB___ DEPUTY
```

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
ERIK M. SILBER (Cal. Bar No. 190534)
AMANDA M. BETTINELLI (Cal. Bar No. 233927)
Assistant United States Attorneys
Environmental and Community Safety Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2231/0470
    Facsimile: (213) 894-8513
    E-mail:   Erik.Silber@usdoj.gov
             Amanda.Bettinelli@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-137-TJH |
|---|---|
| Plaintiff, | <u>PLEA AGREEMENT FOR DEFENDANT OTTO ESCOBAR, SR.</u> |
| v. | |
| OTTO ESCOBAR, SR., | |
| Defendant. | |

1. This constitutes the plea agreement between defendant OTTO ESCOBAR, SR. ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO"). This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2. Defendant agrees to:

    a. Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the

Court, appear and plead guilty to a one-count second superseding information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with causing and aided and abetting bribery concerning programs receiving federal funds, in violation of 18 U.S.C. §§ 666(a)(1)(B), 2(a), 2(b).

        b.   Agree that all court appearances, including his change of plea hearing and sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by Order of the Chief Judge 20-043 or another order, rule, or statute.  Defendant understands that, under the United States Constitution, the United States Code, and the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43), he may have the right to be physically present at these hearings.  Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely.  Defense counsel also joins in this consent, agreement, and waiver.  Specifically, this agreement includes, but is not limited to, the following:

        i. Defendant consents under Federal Rules of Criminal Procedure 5(f) and 10(c) and Section 15002(b) of the CARES Act to proceed with his initial appearance and arraignment by VTC or telephone, if VTC is not reasonably available.

        ii. Defendant consents under Section 15002(b) of the CARES Act to proceed with his waiver of indictment, under Federal Rule of Criminal Procedure 7(b), by VTC or telephone, if VTC is not reasonably available.

    iii. Defendant consents under Section 15002(b) of the CARES Act to proceed with his change of plea hearing by VTC or telephone, if VTC is not reasonably available.

    iv. Defendant consents under Section 15002(b) of the CARES Act to proceed with his sentencing hearing by VTC or telephone, if VTC is not reasonably available.

    v. Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pretrial release by VTC or telephone, if VTC is not reasonably available.

  c. Not contest facts agreed to in this agreement.

  d. Abide by all agreements regarding sentencing contained in this agreement.

  e. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

  f. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

  g. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

  h. Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

THE USAO'S OBLIGATIONS

3. The USAO agrees to:

  a. Not contest facts agreed to in this agreement.

      b.   Abide by all agreements regarding sentencing contained in this agreement.

      c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

      d.   Because the justice system is facing an unprecedented crisis through the backlog of cases, the parties agree that the defendant is entitled to a two-level variance, and the government agrees to request a two-level variance if defendant complies with paragraph 2 above, as recognition of defendant's early acceptance of responsibility, which will lessen the burden on the court system by: (1) waiving any right to presence and pleading guilty at the earliest opportunity by VTC (or telephone, if VTC is not reasonably available); (2) waiving any right to presence and agreeing to be sentenced by VTC (or telephone, if VTC is not reasonably available) should the Central District of California's General Order allow for it; (3) agreeing to appear at all other times by VTC or telephone; and (4) waiving all appellate rights.

      e.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A, without regard to reductions in the term of imprisonment that may be permissible through the substitution

of community confinement or home detention as a result of the offense level falling within Zone B or Zone C of the Sentencing Table.

   f. Should the Court sentence defendant to a term of imprisonment, recommend that defendant not be required to self-surrender to serve his sentence until on or after February 1, 2021, unless defendant violates the conditions of his bond.

## NATURE OF THE OFFENSE

   g. Defendant understands that for defendant to be guilty of the crime charged in the second superseding information, that is, bribery concerning programs receiving federal funds, in violation of 18 U.S.C. §§ 666(a)(1)(B), 2(a), 2(b), the following must be true: (1) a co-defendant was an agent of an organization or of any state or local government or agency; (2) the organization, government, or agency received benefits in excess of $10,000 in a one-year period pursuant to a Federal program involving a grant, a contract, a subsidy, a loan, a guarantee, insurance, or another form of Federal assistance; and (3) a co-defendant corruptly solicited or demanded for the benefit of any person, or accepted or agreed to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more.  For defendant to have aided and abetting a violation of bribery concerning programs receiving federal funds under 18 U.S.C. § 2(a), (1) someone else committed the offense of bribery concerning programs receiving federal funds; (2) defendant aided, counseled, commanded, induced or procured that person with respect to at least one element of the offense of bribery concerning programs receiving federal funds; (3) defendant acted with the intent

to facilitate the offense of production of identification documents; and (4) defendant acted before the crime was completed.  A defendant may also be guilty of the offense of bribery concerning programs receiving federal funds under 18 U.S.C. § 2(b) even if the defendant did not personally commit the acts constituting the crime if the defendant willfully caused an act to be done that if directly performed by him would be an offense against the United States.  A defendant who puts in motion or causes the commission of an indispensable element of the offense may be found guilty as if he had committed this element himself.

## PENALTIES

4.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 666, is: 10 years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

5.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

6.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic

rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

7.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

## FACTUAL BASIS

8.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 10 below but is

not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Starting no later than 2015 and continuing through 2017, defendant operated OK Driving School, through which he arranged for California Department of Motor Vehicle ("DMV") applicants who could not otherwise obtain driver's licenses to fraudulently obtain them. Defendant charged his customers a fee for obtaining a fraudulent passing DMV score, and to facilitate the fraud, and he collected money used to bribe DMV employees to commit the fraud. The money was then, in fact, paid to DMV employees as a bribe to commit the fraud.

For example, in or around March 2015, driver's license applicant I.S.R. agreed to pay defendant $400 to obtain a fraudulent passing score on the written test for a driver's license. Defendant then arranged for the entry of the fraudulent passing test, keeping $200 of the fees and causing $200 to be forwarded to DMV employees to obtain the fraudulent passing test. To execute the scheme and to commit fraud, on March 23, 2015, a DMV employee accessed California DMV computer records associated with applicant I.S.R., improperly entered passing scores on tests required for an instructional permit for I.S.R. (signs test and Class C Law test), and then issued an instructional permit to I.S.R. DMV fraud applicant I.S.R., however, never actually physically went to the Torrance DMV office, did not take the required tests, and was therefore not entitled to receive the California DMV instructional permit. Instead, I.S.R. was fraudulently attempting to obtain an instructional permit (and ultimately driver's license), and defendant accepted money to arrange the false entry of the passing test scores.

Similarly, in or around March 2015, driver's license applicant R.H.B. agreed to pay defendant $700 to obtain a fraudulent passing score on the written test for his driver's license. Defendant then arranged for the entry of the fraudulent passing test, keeping $350 of the fees and causing $350 to be forwarded to DMV employees to obtain the fraudulent passing test. On same date identified above, March 23, 2015, that same DMV employee again improperly accessed a California DMV record, this time associated with applicant R.H.B., entered passing scores on tests required for an instructional permit for R.H.B. (signs test and Class C Law test), and then issued a California DMV instructional permit for R.H.B. Similar to I.S.R., applicant R.H.B. never physically went to the Torrance DMV office, did not take the tests, and was therefore not entitled to receive the California DMV instructional permit. As above, applicant R.H.B. was fraudulently attempting to obtain an instructional permit (and ultimately driver's license), and defendant accepted money to arrange the false entry of the passing test scores.

Similarly, in or around April 2016, R.H.B.'s son also agreed to pay defendant to fraudulently obtain a driver's license after he twice failed the written test. R.H.B.'s son agreed to pay $2,000 to fraudulently obtain a passing score on the written test for his driver's license. Defendant then arranged for the entry of the fraudulent passing test, keeping $1,000 of the fees and causing $1000 to be forwarded to DMV employees to obtain the fraudulent passing test. On April 7, 2016, a different DMV employee, who was working under the direction of the previous DMV employee, improperly accessed the California DMV computer record associated with R.H.B.'s son, entered passing scores on a test required for an instructional permit

for R.H.B.'s son (Class C Law test), and then issued a California DMV instructional permit for R.H.B.'s son.  As above, R.H.B.'s son never went in person to a California DMV office location, did not take the tests, and was therefore not entitled to receive the California DMV instructional permit.  Instead, defendant accepted money to arrange the false entry of the passing test scores.

On December 13, 2017, law enforcement set up an undercover transaction involving defendant where the undercover officer would pay defendant $600 to arrange a fraudulent driver's license.  The undercover officer paid defendant the $600, which defendant accepted, but law enforcement called off the attempted transaction before actually obtaining the fraudulent driver's license.

From on or about March 23, 2015, to on or about March 22, 2016, California DMV employees received at least $5,000 to arrange for fraudulent driver's licenses.  In 2015 and 2016, the California DMV received five different grants of federal funds under Federal programs:  (1) 2012 Performance and Registration Information Systems Management ("PRISM"); (2) 2015 PRISM; (3) 2013 Commercial Driver's License Program Improvement ("CDLPI"); (4) 2014 CDLPI; and (5) Joint Terrorism Task Force.  The first four categories of funding came from programs by the Federal Motor Carrier Safety Administration and the last category came from a program of the Federal Bureau of Investigation.  For the fiscal year beginning on July 1, 2014 and ending on June 30, 2015, the California DMV received $1,414,332 in federal grant money and, in the fiscal year beginning on July 1, 2015 and ending on June 30, 2016, the California DMV received $954,147 in federal grant money.  From on or about March 23, 2015, to on or about

March 22, 2016, the California DMV received at least $10,000 of federal grant money under one or more federal programs.

## SENTENCING FACTORS

9.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

10.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 12 | U.S.S.G. § 2C1.1(a)(2) |
| More than One Bribe: | +2 | U.S.S.G. § 2C1.1(b)(1) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate, including an enhancement for value of the bribes under U.S.S.G. § 2C1.1(b)(2) and an enhancement because the offense involved a sensitive position under U.S.S.G. § 2C1.1(b)(3).

11.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

## WAIVER OF CONSTITUTIONAL RIGHTS

12. Defendant understands that by pleading guilty, defendant gives up the following rights:

   a. The right to persist in a plea of not guilty.

   b. The right to a speedy and public trial by jury.

   c. The right to be represented by counsel – and if necessary have the Court appoint counsel - at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the Court appoint counsel – at every other stage of the proceeding.

   d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

   e. The right to confront and cross-examine witnesses against defendant.

   f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

   g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

   h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

13. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to

appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

14.  Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

15.  Defendant also gives up any right to bring a postconviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to,

13

arguments that the statute to which defendant is pleading guilty is unconstitutional, that newly discovered evidence purportedly supports defendant's innocence, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

16. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 30 months in prison, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

17. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

18. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

19. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

20. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

    a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

    b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any

speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

21.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

22.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it

chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 10 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

23. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

24. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

25. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney

_/s/_ 10/23/2020
ERIK M. SILBER                                      Date
AMANDA M. BETTINELLI
Assistant United States Attorneys

_/s/_ 10-15-20
OTTO ESCOBAR, SR.                                   Date
Defendant

_/s/_ 10/15/2020
CAREL ALE                                           Date
Attorney for Defendant

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those

18

contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____      _10-15-20_____
OTTO ESCOBAR, SR.                                  Date
Defendant

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Otto Escobar, Sr.'s attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____      10/15/2020
CAREL ALE                                             Date
Attorney for Defendant